UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YASMIN BELIZE VIMBI PINDA,

               Petitioner,

    v.

MARKWAYNE MULLIN, *et al.*,

               Respondents.

Case No. C26-2477-MLP

ORDER

Petitioner Yasmin Belize Vimbi Pinda, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing that his redetention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, is unlawful. (Dkt. # 1.) He seeks immediate release as well as injunctive relief related to any future redetention. (*Id*.) Respondents filed a return (dkt. # 5), supported by a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Rita Soraghan (dkt. # 6), and an unsworn declaration from their counsel, Jennifer Wong (dkt. # 7). Petitioner filed a traverse (dkt. # 8).

ORDER - 1

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1).[1]

## I. BACKGROUND

Petitioner is a native and citizen of the Democratic Republic of Congo, who was arrested by border patrol after entering the United States on February 6, 2024, near San Ysidro, California. (Soraghan Decl., ¶¶ 4-5.) Petitioner was released the next day on an Order of Release on Recognizance ("OREC") issued "in accordance with section 236 of the Immigration and Nationality Act[.]" (*Id.* ¶ 7; Wong Decl., ¶ 2, Ex. 3.)

While released, Petitioner lived in the Tukwila area. (Dkt. # 1, ¶ 25.) He filed for asylum in August 2024. (*Id.* ¶ 28.)

On November 20, 2025, Petitioner was arrested by Tukwila Police for Assault in the Fourth Degree, Domestic Violence. (Soraghan Decl., ¶ 8.) Charges were filed but later dismissed on March 25, 2026. (*Id.*)

On June 17, 2026, ICE arrested Petitioner after he reported to the Seattle field office for a prescheduled OREC appointment and ERO officers discovered the November 2025 arrest "[d]uring routine system queries[.]" (Soraghan Decl., ¶ 8.) Despite acknowledging the charges were dismissed, Officer Soraghan asserts that Petitioner's arrest violated the terms of his OREC. (*Id.* ¶ 9.) ICE approved a custody redetermination, issued a warrant for Petitioner's arrest, revoked Petitioner's OREC, and took him into custody. (*Id.*) He was transferred to the NWIPC, where he remains detained. (*Id.* ¶ 10.)

Petitioner was not provided written notice of the alleged violation, an explanation for revoking his release, or an opportunity to respond prior to his redetention. (Dkt. ## 1, ¶ 5, 5 at 8.)

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 2

On July 14, 2026, Petitioner filed this habeas petition. (Dkt. # 1.) He argues that his redetention, when assessed under the framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), violated his due process rights under the Fifth Amendment. (*Id.* ¶¶ 45-67.)

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    DISCUSSION

Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and that his redetention complied with *Mathews*. (Dkt. # 5 at 3-8.)

### A.    Statutory Detention Authority

Sections 235-36 of the Immigration and Nationality Act, codified at 8 U.S.C. §§ 1225-26, govern immigration detention for noncitizens awaiting removal from the United States. Section 1226(a) sets the default rule permitting discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1225 applies to "applicants for admission," *i.e.*, a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission are generally subject to mandatory detention under § 1225(b), with release only on parole "for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287.

The Court quickly disposes of Respondents' assertion that Petitioner's detention is governed under § 1225(b)(2). (Dkt. # 5 at 3-5.) Respondents' position—that all noncitizens who

ORDER - 3

enter the United States "without inspection or parole" and who are not placed on the expedited removal or credible fear tracks of § 1225(b)(1) are "applicants for admission" who are also "seeking admission" under § 1225(b)(2)(A)—was rejected in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1329 (W.D. Wash. 2025). Courts in this District have adopted the reasoning of *Rodriguez Vazquez* and found those who *are* apprehended upon arrival, released, then later redetained are similarly subject to discretionary detention under § 1226(a). *E.g., Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1197 (W.D. Wash. 2025); *Del Valle Castillo v. Wamsley*, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025). Moreover, the Ninth Circuit affirmed *Rodriguez Vazquez* during the pendency of this case, holding that noncitizens present without admission apprehended in the interior of the United States are subject to § 1226, not § 1225(b)(2)(A). *Rodriguez Vazquez v. Bostock*, --- F.4th --- , 2026 WL 2196424, at *26 (9th Cir. July 30, 2026); *see id.* at *10 ("In this case, we conclude that § 1225(b)(2)(A), based on its text and context, is best construed as applying to [noncitizens] entering the United States at the border. Section 1226, by contrast, is best understood as governing inadmissible and deportable [noncitizens] present in the interior of the United States.").

Respondents' reliance on *Blanche v. Lau*, 609 U.S. ---, 146 S. Ct. 1981 (2026), and *Mullin v. Al Otro Lado*, 609 U.S. ---, 146 S. Ct. 2079 (2026), is misplaced. *Blanche* addressed parole under § 1182(d)(5)(A) and a noncitizen "regarded" as seeking admission under § 1101(a)(13)(C)(v). 146 S. Ct. at 1987. *Mullin* addressed when a noncitizen "arrives in the United States[,]" not at issue here, and distinguished "applicants for admission" from those "otherwise seeking admission." 146 S. Ct. at 2087 (citing § 1225(a)(3)). The Ninth Circuit likewise rejected conflating those terms in *Rodriguez Vazquez*. 2026 WL 2196424, at *16.

ORDER - 4

The government's treatment of Petitioner since 2024 also points to § 1226(a). "[W]here a petitioner has been 'treated by Respondents as subject to discretionary detention under [§ 1226(a)], rather than mandatory detention under [S]ection 1225,' the former is more likely to apply." *Del Valle Castillo*, 2025 WL 3524932, at *5 (quoting *Romero v. Hyde*, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)).

Petitioner was briefly detained and released on his recognizance under § 236, which is codified at 8 U.S.C. § 1226(a). (Soraghan Decl., ¶ 7; Wong Decl., ¶ 2, Ex. 3.) He then lived in the United States subject to the conditions of his OREC for nearly two and a half years. Nothing indicates he was on parole or "seeking admission" during that time. *See Del Valle Castillo*, 2025 WL 3524932, at *7. Section 1226(a) governs.

**B.     *Mathews* and Due Process**

Due process protections extend to all persons within the United States, including noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews*, 424 U.S. at 332. Courts apply *Mathews* by weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025).

*1.      Private Interest*

Freedom from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). A

ORDER - 5

person previously released is deprived of that interest upon renewed detention. *See Makuey v. Scott*, 2025 WL 3640900, at \*4 (W.D. Wash. Dec. 16, 2025). This factor favors Petitioner.

### 2. *Risk of Erroneous Deprivation*

The fact that Petitioner's redetention was predicated on a criminal case that had been dismissed months prior shows there was a high risk of an erroneous deprivation and that additional, pre-deprivation safeguards would have been valuable in ensuring such deprivation did not occur. Respondents do not dispute that Petitioner received no prior notice or opportunity to challenge detention. (*See generally* dkt. # 5.) And yet despite acknowledging Petitioner's criminal case was dismissed nearly three months before ICE redetained him, Respondents disconcertingly maintain the position that his arrest violated the terms of his OREC and served as the basis for redetaining him without process. (Dkt. # 5 at 7.) Respondents offer no explanation why Petitioner's dismissed case constituted a violation of law and thus violated the conditions of Petitioner's OREC—a position that appears in tension with the concept of innocence.

The only other justification for Petitioner's redetention advanced by Respondents is the application of § 1225(b), which the Court rejects. The second factor weighs in Petitioner's favor.

### 3. *Governmental Interest*

The government has legitimate interests in enforcing immigration laws, protecting the community, and ensuring appearance. But Respondents identify no concrete way in which providing a brief pre-deprivation custody hearing would materially impede those interests. Custody and bond hearings are routine, and courts have found the incremental burden modest compared to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

ORDER - 6

Respondents argue "the government's interest in efficient enforcement, protecting the community, and ensuring Petitioner's appearance at removal proceedings [were] substantial and heightened by his unlawful conduct." (Dkt. # 5 at 8.) Aside from the dismissed criminal case, the record lacks any other evidence showing Petitioner posed a danger to the community or a risk of absconding—the two regulatory goals addressed by civil immigration detention, which itself is intended to be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690.

All three *Mathews* factors favor Petitioner. Habeas relief is therefore warranted. Given the lack of lawful process at the outset and the absence of exigent circumstances, release is the appropriate, constitutionally required remedy. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

**C.     Injunctive Relief**

Petitioner also requests this Court "[e]njoin Respondents from continuing to detain [him] absent constitutionally adequate procedures consistent with due process." (Dkt. # 1 at 14.) To the extent this request seeks relief beyond his release ordered under *Mathews* above, Petitioner does not establish an adequate factual record or engage with the elements necessary for injunctive relief. The request is therefore denied without prejudice.

## IV.     CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)     Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

a.     Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

ORDER - 7

b. Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2) Petitioner's request for injunctive relief is DENIED without prejudice.

(3) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are reminded of the meet-and-confer requirement under this Court's chambers procedures.

Dated this 6th day of August, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 8